UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL
WELFARE, PENSION, AND ANNUITY
FUNDS and THE TRUSTEES OF THE
LOCAL 1010 APPRENCTICESHIP, SKILL
IMPROVEMENT, AND TRAINING FUND,

                    Plaintiffs,

       v.

TOROS BROTHERS CONSTRUCTION
CORP.,

                    Defendant.

**MEMORANDUM & ORDER**
24-CV-6634 (HG)

**HECTOR GONZALEZ**, United States District Judge:

     Plaintiffs Trustees of the Pavers and Road Builders District Council Welfare, Pension,

and Annuity Funds and Trustees of the Local 1010 Apprenticeship, Skill Improvement, and

Training Fund (collectively, the "Funds" or "Plaintiffs"), bring this action pursuant to the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145,

and Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.

*See* ECF No. 1 ¶ 1 (Complaint; "Compl.").[1]

     Plaintiffs seek to recover estimated delinquent employer contributions and union

assessments from Defendant Toros Brothers Construction Corp. ("Defendant" or "Toros

Brothers"), as well as accrued interest, liquidated damages, attorneys' fees and costs, and post-

judgment interest. *See id.* at 7–8, Wherefore Clause; ECF No. 31-8 (Declaration of Adrianna R.

Grancio, Esq. Ex. S; "Proposed Default Judgment"). Upon Plaintiffs' application and in light of

---

[1]     Unless otherwise indicated, when quoting cases and Plaintiffs' papers, the Court omits all
internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers
to the pages assigned by the Electronic Case Files system ("ECF").

Defendant's failure to appear in or otherwise defend this action, the Clerk of the Court entered Defendant's default on November 19, 2024. ECF No. 14 (Certificate of Default). Plaintiffs now move for default judgment against Defendant. *See generally* ECF No. 27 (Motion for Default Judgment; "Mot."); ECF No. 32 (Memorandum in Support of Motion for Default Judgment; "Mem."). The Court GRANTS default judgment on Plaintiffs' ERISA and LMRA claims and awards damages in the amounts set out below.[2]

## **BACKGROUND**

The following facts are drawn from Plaintiffs' Complaint and declarations in support of Plaintiffs' motion (ECF Nos. 1, 28–31) and are accepted as true for purposes of adjudicating this motion.[3]

Plaintiffs are employer and employee trustees of multiemployer labor-management trust funds administered in New York and organized and operated in accordance with Section 302(c) of the LMRA. Compl. ¶ 4. Plaintiffs also qualify as employee benefit plans within the meaning of Section 3(3) of ERISA. *Id.* Defendant, for its part, is a domestic business corporation engaged in the construction business and organized under the laws of New York with its principal office in Brooklyn. *Id.* ¶ 5. At all relevant times, Defendant was an employer within

---

[2]      The framework and legal analysis in this decision are derived from the Reports and Recommendations of Judge Cho in *Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds et al. v. Cape Mount Heavy Construction & Associates, LLC*, No. 22-cv-5050, 2023 WL 5830338 (E.D.N.Y. July 31, 2023), *report and recommendation adopted*, 2023 WL 5287218 (E.D.N.Y. Aug. 17, 2023), and *Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds et al. v. Atlantic Steel Solutions, LLC*, No. 21-cv-02518, 2022 WL 4642735 (E.D.N.Y. Sept. 15, 2022), *report and recommendation adopted*, 2022 WL 4662723 (E.D.N.Y. Sept. 30, 2022).

[3]      When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

the meaning of Section 3(5) of ERISA and an employer in an industry affecting commerce within the meaning of Section 501 of the LMRA. *Id.*

Defendant and the Highway, Road and Street Construction Laborers Local Union 1010 (the "Union") are bound by a series of collective bargaining agreements (the "CBAs"). *Id.* ¶ 10; ECF No. 28 ¶¶ 5–9 (Declaration of Keith Loscalzo; "Loscalzo Decl."). The CBAs require Defendant to "remit specified benefit contributions to the Funds and related entities on behalf of which the Funds act as collection agents, in connection with all work performed within the trade and geographical jurisdiction of the Union ('Covered Work')." Compl. ¶ 14; Loscalzo Decl. ¶ 10; ECF Nos. 28-1, 28-2, Art. IX (Loscalzo Decl. Exs. A–B; "CBAs"). The CBAs also require Defendant to remit specified dues check-offs and other contributions to the Union ("union assessments") in connection with Covered Work performed by each of Defendant's employees. Compl. ¶ 15; Loscalzo Decl. ¶ 13; CBAs, Art. IX. Finally, the CBAs provide that the "[e]mployer is bound by all of the terms and conditions of the Agreements and Declarations of Trust [hereafter, 'Trust Agreements'] with respect to the Welfare Fund, Pension Fund, Training Fund and Annuity Fund, which Agreements and Declarations of Trust are hereby made part of this [CBA] and are incorporated herein." Compl. ¶ 11; Loscalzo Decl. ¶ 16; CBAs, Art. IX; ECF No. 29 ¶ 5 (Declaration of Joseph Montelle; "Montelle Decl.").

The Trust Agreements, in turn, provide that in operating and administering the Funds, the Board of Trustees shall have the "exclusive right to interpret the Plan and decide any matters arising thereunder in connection with the administration of the Plan" and "may from time to time establish rules for the administration of the Plan and the transaction of business." Compl. ¶ 12; Montelle Decl. ¶ 6; ECF No. 29-1, Art. VI; ECF No. 29-2, Art. V; ECF No. 29-3, Art. VIII (Montelle Decl. Exs. D–F; "Trust Agreements"). In accordance with those provisions, Plaintiffs

3

promulgated a Policy for Collection of Delinquent Fringe Benefit Contributions (the "Collection

Policy"), to which Defendant is also bound.  Montelle Decl. ¶ 7; ECF No. 29-4 (Montelle Decl.

Ex. G; "Collection Policy"); Compl. ¶ 13.

The Collection Policy states that (1) contributions and remittance reports showing the

employees that performed Covered Work and the hours worked are due no later than 35 days

after the end of a month during which the hours were worked; (2) contributions are delinquent

one calendar day after the due date; (3) if Defendant fails to make contributions when due, it is

liable to the Funds for interest on the unpaid contributions at an annual rate of ten percent (10%)

(calculated from the due date) and liquidated damages of ten percent (10%) of the amount of the

unpaid contributions; and (4) if legal action is commenced, Defendant is obligated to pay all

costs, including attorneys' fees and expenses.  Montelle Decl. ¶¶ 8–9, 11; Collection Policy, Art.

II ¶¶ 1–2, 5; Compl. ¶¶ 16–17, 19, 21; Loscalzo Decl. ¶ 19.

The Collection Policy further provides that where an employer is two or more months

delinquent in making its contributions and has not submitted remittance forms, the Board of

Trustees may project as the amount of the delinquency the greater of (a) the average of the

monthly payments based on reports actually submitted by the employer for the last three months

for which payments and reports were submitted or (b) the average of the monthly payments

based on reports actually submitted by the employer for the last 12 months for which payments

and reports were submitted, and that projection may be used as a determination of payments due

for each delinquent month and for purposes of any lawsuit.  Montelle Decl. ¶ 10; Collection

Policy, Art. IV ¶ 9.

To ensure compliance with the above-described obligations, Plaintiffs engage the

services of a third-party administrator, Zenith American Solutions Inc. ("Zenith"), to monitor the

4

payment of benefit contributions and union assessments, as well as the submission of remittance reports, by signatory employers such as Toros Brothers.  ECF No. 30 ¶¶ 3, 6–8 (Declaration of Wendy Morris; "Morris Decl.").  In the course of monitoring payments and reports from Toros Brothers, Zenith determined that, for the period of December 2023 through July 2024 (the "Delinquency Period"), Toros Brothers failed to submit the required reports and to remit estimated contributions of **$155,116.08** and estimated union assessments of **$6,356.73**.  Montelle Decl. ¶¶ 12, 31; ECF No. 29-6 (Montelle Decl. Ex. I; "Estimation Calculation"); Compl. ¶ 24; Morris Decl. ¶ 9; ECF No. 30-1 (Morris Decl. Ex. K; "No Reports Received Report").

* * *

Plaintiffs commenced this action on September 20, 2024.  *See generally* Compl.; ECF No. 31 ¶ 2 (Declaration of Adrianna R. Grancio, Esq.; "Grancio Decl.").  On September 25, 2024, Plaintiffs served the Summons and Complaint on Defendant through the New York State Secretary of State as a designated agent pursuant to Section 306 of the Business Corporation Law.  ECF No. 6 (Affidavit of Service).  After Defendant failed to timely file an answer or otherwise appear in this matter, Plaintiffs filed a request for a Certificate of Default and served that request on Defendant.  ECF No. 12 (Request for Certificate of Default); ECF No. 13 (Certificate of Service of Request for Certificate of Default).  The Clerk of the Court entered a Certificate of Default noting Defendant's default on November 19, 2024.  ECF No. 14 (Certificate of Default).

On December 19, 2024, Plaintiffs moved for a default judgment.  ECF No. 16 (Default Judgment Motion).  On August 5, 2025, the Court raised an error in Plaintiffs' calculations and issued an Order to Show Cause why those calculations were not improper.  *See* August 5, 2025, Text Order.  In response, Plaintiffs moved to withdraw their motion.  ECF No. 26 (Response to

5

Order to Show Cause).  On August 21, 2025, Plaintiffs filed a corrected motion for a default

judgment, which Plaintiffs served on Defendant, and which is the operative motion.  ECF No. 27

(Corrected Default Judgment Motion); ECF No. 33 (Certificate of Service of Corrected Default

Judgment Motion).

In that motion, Plaintiffs request damages in the amount of at least **$203,999.82**,

including the following:

(1) estimated delinquent contributions of **$155,116.08** and estimated delinquent union

assessments of **$6,356.73** for the Delinquency Period, plus interest on the estimated delinquent

contributions of **$19,156.61**, and liquidated damages of **$15,511.61**;

(2) additional interest on the estimated delinquent contributions calculated at the rate set

forth in the CBAs and the Collection Policy from August 15, 2025, through the date of judgment;

(3) attorneys' fees and expenses of **$7,858.79**; and

(4) post-judgment interest calculated at the statutory rate.  *See* Proposed Default

Judgment.

## **DISCUSSION**

### I.    **Liability Under ERISA and the LMRA**[4]

"When a party against whom a judgment for affirmative relief is sought has failed to

plead or otherwise defend" itself, a plaintiff may apply to the court for a default judgment.  *See*

---

[4]    Before rendering judgment against a defendant, the Court must "satisfy itself that it has
subject matter and personal jurisdiction."  *Dumolo v. Dumolo*, No. 17-cv-7294, 2019 WL
1367751, at *4 (E.D.N.Y. Mar. 26, 2019).  Here, the Court has subject matter jurisdiction
pursuant to 29 U.S.C. §§ 1132(a)(3), (e)(1), and 185.  The Court has personal jurisdiction over
Defendant because Defendant was properly served through the Secretary of State (ECF No. 6),
and Defendant was formed under the laws of New York and is operating within the State.  *See*
Compl. ¶ 5; *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v.
IKNA Constr. LLC*, No. 24-cv-561, 2025 WL 447731, at *5 (E.D.N.Y. Jan. 15, 2025), *report and
recommendation adopted*, 2025 WL 777108 (E.D.N.Y. Mar. 11, 2025).  Venue is likewise
proper, as Defendant "resides or may be found" in Brooklyn, and this Court has jurisdiction over

Fed. R. Civ. P. 55(a), (b)(2).  When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Romanowicz*, 577 F.3d at 84.  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.").

Here, Plaintiffs' Complaint establishes Defendant's liability under ERISA and the LMRA.  Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  "ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." *Trs. of the Local 7 Tile Indus. Welfare Fund v. City Tile*, Inc., No. 10-cv-322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), *report and recommendation adopted*, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011).

Plaintiffs allege that Defendant is an "employer" and that the Funds are "employer and employee trustees of multiemployer labor-management trust funds" and "employee benefit

---

the parties. *See* Compl. ¶ 5; 29 U.S.C. §§ 1132(e)(2), 185(a).  Finally, the Court notes that Plaintiffs have complied with the procedural requirements of Federal Rule of Civil Procedure 55 and Local Rule 55.2, including requesting a Certificate of Default (ECF No. 12), which was entered by the Clerk of Court (ECF No. 14), and serving on Defendant their motion papers and related papers (ECF Nos. 13, 23, 33).

plans" under ERISA.  Compl. ¶¶ 4–5.  Plaintiffs further allege that Defendant was obligated to make contributions to Plaintiffs pursuant to the CBAs and that Defendant failed to make the required contributions.  *See id.* at ¶¶ 14–30.  These factual allegations are sufficient to establish Defendant's liability under ERISA for the unpaid contributions.

As for the LMRA, Section 301(a) authorizes "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a).  Plaintiffs are "employer and employee trustees of multiemployer labor-management trust funds" under the LMRA and Defendant is "an employer in an industry affecting commerce within the meaning of section 501 of the LMRA."  Compl. ¶¶ 4–5; *see also* 29 U.S.C. §§ 142, 186(c).  Defendant was obligated to make payments pursuant to the CBAs and failed to do so.  Compl. ¶¶ 15, 23–25.  Plaintiffs' uncontested allegations are sufficient to establish Defendant's liability under the LMRA.  *See Finkel v. Allstar Elec. Corp.*, No. 11-cv-3222, 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff has established liability under Section 301 of the LMRA because it sufficiently pleads that [defendant] failed to remit the Required Contributions in accordance with their obligations under the CBAs.").

In light of the foregoing, the Court GRANTS default judgment on Plaintiffs' ERISA and LMRA claims.[5]

---

[5]    Plaintiffs seek to recover unpaid union assessments on behalf of the Union, a non-party, and unpaid benefit contributions on behalf of certain non-party benefit funds.  While Plaintiffs ordinarily would lack standing to pursue relief on behalf of non-parties, courts in this district have allowed such claims where, as here, the plaintiff-trustees are designated as collection agents on behalf of the non-parties, and the submission of contributions to those non-parties were made pursuant to a "one-check" system.  *See* Loscalzo Decl. ¶ 14; CBAs, Art. IX, §§ 1(b), 4; *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC*, No. 22-cv-5047, 2023 WL 5152421, at *1 n.1 (E.D.N.Y. May 16, 2023) (collecting cases), *report and recommendation adopted*, June 2, 2023, Text Order; *Trs. of Pavers and Rd. Builders Dist. Council Welfare, Pension, and Annuity Funds v. Litehouse Builders, Inc.*, No. 22-cv-7237, 2023 WL 3306687, at *2 (E.D.N.Y. May 8, 2023); *Cape Mount Heavy Constr. & Assocs., LLC,* 2023 WL 5830338, at *4 n.2, *report and recommendation adopted*, 2023 WL 5287218.  Thus, I

II.     **Damages**

While the allegations of a complaint concerning liability are deemed admitted upon entry

of default, allegations related to damages are not.  *See Cement & Concrete Workers Dist.*

*Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v.*

*Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).  A court must ensure there is

an evidentiary basis for the damages sought by a plaintiff before entering judgment in the

amount demanded.  *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

A court may make this determination based upon evidence presented at a hearing or upon a

review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Joe Hand*

*Promotions, Inc. v. Levin*, No. 18-cv-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019)

(holding that a hearing is "not necessary as long as [the Court] ensure[s] that there was a basis

for the damages specified in the default judgment"); *Fustok*, 873 F.2d at 40 (noting that a court

may rely on detailed affidavits and documentary evidence as the basis for determining damages

to be awarded in a default judgment).

Here, Plaintiffs have submitted in support of their motion declarations from the following

individuals:  Keith Loscalzo, an officer of the Union and a trustee of the Local 1010

Apprenticeship, Skill Improvement, and Training Fund (ECF No. 28); Joseph Montelle,

Administrator of the Pavers and Road Builders District Council Welfare, Pension, and Annuity

Funds (ECF No. 29); Wendy Morris, Vice President, Accounts Receivable for Zenith (ECF

No. 30); and Adrianna Grancio, a partner at the law firm Virginia & Ambinder, LLP ("V&A"),

attorneys for Plaintiffs in this action (ECF No. 31)  These declarations detail the calculations of

Defendant's estimated delinquent contributions and union assessments under the CBAs, as well

---

find that Plaintiffs have standing to pursue the recovery of delinquent contributions on behalf of
the Union and the non-party funds.

as calculations of interest, liquidated damages, and attorneys' fees and expenses.  Further, Plaintiffs have provided copies of the CBAs, (Loscalzo Decl. Exs. A–B), the Trust Agreements (Montelle Decl. Exs. D–F), and the Collection Policy (Montelle Decl. Ex. G), along with the reports which form the bases of the calculations.  Defendant has not submitted any opposition.

Based on those documents, Plaintiffs request the following damages:  (A) estimated delinquent contributions of **$155,116.08** and estimated delinquent union assessments of **$6,356.73**; (B) interest accrued, as of August 14, 2025, on the estimated delinquent contributions of **$19,156.61**; (B) additional interest accrued between August 15, 2025, through the date of judgment; (C) liquidated damages of **$15,511.61**; (D) attorneys' fees and expenses of **$7,858.79**; and (E) post-judgment interest calculated at the statutory rate.  *See* Mem. at 7, 13–19; Proposed Default Judgment.  The Court addresses each of these calculations in turn.

A.    *Estimated Delinquent Contributions and Union Assessments*

"An employer's failure to contribute an agreed upon amount to a benefit plan pursuant to a collective bargaining agreement is an ERISA violation creating a right of action for the benefits due."  *Masino v. A to E, Inc.*, No. 07-cv-3462, 2009 WL 5184340, at *2 (E.D.N.Y. Dec. 21, 2009).  ERISA, 29 U.S.C. § 1132(g)(2), authorizes the Funds to recover:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of –

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),

(D) reasonable attorneys' fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

"Section 1132(g) thus creates a mandatory right to interest, liquidated damages, and attorney's fees in any case in which a judgment in favor of the plan is awarded."  *Masino*, 2009 WL 5184340, at *2.

Here, Zenith found that Toros Brothers failed to submit remittance reports, contribution payments, and union assessments for the period of December 2023 through July 2024, the "Delinquency Period."  Morris Decl. ¶ 9; *see* No Reports Received Report; Montelle Decl. ¶¶ 12, 31.

According to the Collection Policy, where, as here, an employer is two or more months delinquent in making its contributions and has not submitted remittance forms, the Board may project as the amount of the delinquency the greater of (a) the average of the monthly payments based on reports actually submitted by the employer for the last three months for which payments and reports were submitted or (b) the average of the monthly payments based on reports actually submitted by the employer for the last 12 months for which payments and reports were submitted, and that projection may be used as a determination of payments due for each delinquent month and for purposes of any lawsuit.  Collection Policy, Art. IV ¶ 9.

Based on that estimation protocol, Plaintiffs calculated Defendant's average monthly payments based on the last three months for which payments and reports were actually submitted:  October through December 2022.  Montelle Decl. ¶ 15.[6]  Based on the payments made by Defendant during those months, Plaintiffs determined that Defendant owes estimated

---

[6]    Plaintiffs calculated Defendant's average monthly payments based on the last three months for which payments and reports were submitted because Plaintiffs do not have 12 months of reports and payments from Defendant.  Montelle Decl. ¶ 14.

contributions of **$155,116.08** and estimated union assessments of **$6,356.73**.  *Id.* ¶ 31.  However, as explained below, the proper calculations are **$155,116.53** and **$6,356.66**, respectively.[7]

As described in Mr. Montelle's declaration, Plaintiffs began their calculations by adding the payments made by Defendant each month between October and December 2022 and dividing that number by three for an average monthly payment of $20,183.97 (October 2022 ($26,013.70) + November 2022 ($7,227.36) + December 2022 ($27,310.85) = $60,551.91 ÷ 3 = $20,183.97). Montelle Decl. ¶ 18; Estimation Calculation.  Next, Plaintiffs divided that average by the total hourly benefit rate applicable during the Delinquency Period.  Montelle Decl. ¶ 19.  The Delinquency Period—December 2023 through July 2024—spans two benefit rate periods:  July 1, 2023, through June 30, 2024, and July 1, 2024, through June 30, 2025.  *Id.* ¶ 20; *see* ECF No. 29-7 (Montelle Decl. Ex. J; "Rate Sheets").  For the first benefit rate period, the total hourly benefit rate was $51.87.  Montelle Decl. ¶ 21; Rate Sheets at 1.[8]  Accordingly, Plaintiffs divided $20,183.97 by $51.87 to yield an average of 389.13 hours of Covered Work per month for that period.  Montelle Decl. ¶ 21; Estimation Calculation at 1.  Similarly, for the second benefit rate period, the total hourly benefit rate was $53.55.  Montelle Decl. ¶ 22; Rate Sheets at 2.  Again, Plaintiffs divided $20,183.97 by $53.55 to yield an average of 376.92 hours of Covered Work per month for that period.  Montelle Decl. ¶ 22; Estimation Calculation at 2.

Next, Plaintiffs multiplied the average monthly hours for each of the two benefit rate periods by the individual hourly benefit rates for each respective Fund to discern the average monthly contributions and union assessments due to each Fund during the Delinquency Period.

---

[7]    The Court rounds all numbers to two decimals in its calculations, as Plaintiffs do in theirs.  *See generally* Estimation Calculation.

[8]    Plaintiffs are not seeking amounts owed to the Heavy Construction Industry Fund. Montelle Decl. ¶ 21 n.2.

Montelle Decl. ¶¶ 23, 26.  Plaintiffs then added the results to determine the total estimated

monthly contributions and union assessments due across all Funds.  *Id.* ¶¶ 24, 26.

For instance, beginning with the benefit rate period of July 1, 2023, through June 30,

2024, Plaintiffs calculated the estimated monthly contribution obligation as follows:  Welfare

Fund ($6,319.41) + Income Benefit Replacement Fund ($2,821.19) + Pension Fund ($6,743.62)

+ Annuity Fund ($3,502.17) = $19,386.39.  *Id.* ¶ 25; Estimation Calculation at 1.  By the Court's

calculations, however, that obligation for the Welfare Fund is $6,319.47 ($16.24 hourly benefit

rate × 389.13 average monthly hours), which renders a total of $19,386.45.  For the same period,

Plaintiffs calculated the estimated monthly union assessment obligation as follows:  Local 1010

Training Fund ($389.13) + Local 1010 LECET ($311.30) + NYS LECET ($58.37) + NYS

Laborers Health & Safety Fund ($38.91) = $797.72.  Montelle Decl. ¶ 27; Estimation

Calculation at 1.  The correct calculation, however, is $797.71.

For the subsequent benefit rate period of July 1, 2024, through June 30, 2025, Plaintiffs

calculated the estimated monthly contribution obligation as follows:  Welfare Fund ($6,264.38) +

Income Benefit Replacement Fund ($3,015.36) + Pension Fund ($6,645.10) + Annuity Fund

($3,486.51) = $19,411.35.  *See* Estimation Calculation at 2.  Again, however, the Court

calculates a different obligation for the Welfare Fund ($16.62 hourly benefit rate × 376.92

average monthly hours = $6,264.41), which renders the total $19,411.38.   For the same period,

Plaintiffs accurately calculated the estimated monthly union assessment obligation as follows:

Local 1010 Training Fund ($376.92) + Local 1010 LECET ($301.54) + NYS LECET ($56.54) +

NYS Laborers Health & Safety Fund ($37.69) = $772.69.  *Id.*

Finally, Plaintiffs multiplied each estimated monthly obligation—both contributions and

union assessments—by the number of months for which Defendant failed to submit reports.

Montelle Decl. ¶ 28.  For instance, during the rate period of July 1, 2023, through June 30, 2024, Defendant failed to submit reports for seven months, from December 2023 through June 2024. *Id.*  Thus, Plaintiffs multiplied the estimated monthly contributions due ($19,386.39) by seven months to yield a total of $135,704.73 for the period of December 2023 through June 2024.  *Id.* The Court's revised calculation, however, yields a total of $135,705.15 ($19,386.45 × 7). Similarly, Plaintiffs multiplied the estimated monthly union assessments due ($797.72) by seven months to yield a total of $5,584.04.  *Id.*  Again, the Court's revised calculation produces a different total of $5,583.97 ($797.71 × 7).

Likewise, during the rate period of July 1, 2024, through June 30, 2025, Defendant failed to submit reports for one month, July 2024.  *Id.*  at 30.  Accordingly, Plaintiffs multiplied their estimated monthly contribution obligation for that period ($19,411.35) by one month to yield a total of $19,411.35 for July 2024.  Montelle Decl. ¶ 30.  Because the Court calculated an estimate of $19,411.38 instead, the Court concludes that the total for July 2024 is $19,411.38. Similarly, Plaintiffs multiplied their estimated union assessment obligation of $772.69, which was correctly calculated, by one month to yield a total of $772.69 for July 2024.  *Id.*

In sum, Plaintiffs estimate that Defendant owes contributions totaling **$155,116.08** ($135,704.73 + $19,411.35) and union assessments totaling **$6,356.73** ($5,584.04 + $772.69) for the Delinquency Period.  *Id.* ¶ 31.  By contrast, the Court finds that Defendant owes contributions totaling **$155,116.53** ($135,705.15 + $19,411.38) and union assessments totaling **$6,356.66** ($5,583.97 + $772.69) for the Delinquency Period.

## B.    Pre-Judgment Interest

Next, Plaintiffs are entitled to pre-judgment interest on the unpaid contributions.  29 U.S.C. § 1132(g)(2)(B).  ERISA provides that "interest on unpaid contributions shall be

14

determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26."  29 U.S.C. § 1132(g)(2).

Pursuant to the Collection Policy, contributions and remittance reports are due on or before the 35th day after the close of the month in which the Covered Work was performed. Loscalzo Decl. ¶¶ 11–12; CBAs, Art. IX, § 1(b).  Also under that policy, where, as here, an employer fails to pay contributions as required, the employer is responsible for interest at the annual rate of ten percent calculated from the due date.  Montelle Decl. ¶ 11; Collection Policy, Art. II ¶ 5; Compl. ¶ 19; Loscalzo Decl. ¶ 19.  Based on those provisions, Plaintiffs calculated estimated interest of **$19,156.61** on unpaid contributions during the Delinquency Period. Montelle Decl. ¶ 33.  The Court finds that the correct calculation is **$19,151.30**.

Beginning with the December 2023 period, Plaintiffs found a daily interest rate of $5.31 ($19,386.39 estimated monthly contribution obligation × 10% ÷ 365 days).  *Id.* ¶ 34.  Plaintiffs then multiplied this per diem interest rate by the number of days that had elapsed since the December 2023 payment became due.  *Id.*  To determine the number of late days, Plaintiffs calculated the number of days between the due date and August 14, 2025 (the date Plaintiffs' declarations were executed).  *Id.*  December 2023 contributions were due by February 4, 2024 (35 days after December 31, 2023, the close of the month) and were 557 days late as of August 14, 2025.  *Id.*  The daily interest rate ($5.31) multiplied by the number of late days (557) yields a total of $2,957.67 for the December 2023 period.  *Id.*  Plaintiffs repeated this calculation for all months in the Delinquency Period to reach a total of $19,156.61.  *Id.* ¶¶ 33, 35, 37.

As discussed above, the correct average monthly contribution for December 2023 through June 2024 is $19,386.45, and that figure for July 2024 is $19,411.38.  Those numbers yield daily interest rates of $5.31 and $5.32, respectively.  When the per diem interest rates are

multiplied by the number of days that have elapsed since each payment became due, the interest on estimated unpaid contributions during the Delinquency Period totals **$19,151.30** ($2,957.67 + $2,793.06 + $2,639.07 + $2,474.46 + $2,315.16 + $2,150.55 + $1,991.25 + $1,830.08).

| Month | Due Date | Interest Through | Days Late | Daily Interest | Total Interest |
|---|---|---|---|---|---|
| 12/31/2023 | 2/4/2024 | 8/14/2025 | 557 | $5.31 | $2,957.67 |
| 1/31/2024 | 3/6/2024 | 8/14/2025 | 526 | $5.31 | $2,793.06 |
| 2/29/2024 | 4/4/2024 | 8/14/2025 | 497 | $5.31 | $2,639.07 |
| 3/31/2024 | 5/5/2024 | 8/14/2025 | 466 | $5.31 | $2,474.46 |
| 4/30/2024 | 6/4/2024 | 8/14/2025 | 436 | $5.31 | $2,315.16 |
| 5/31/2024 | 7/5/2024 | 8/14/2025 | 405 | $5.31 | $2,150.55 |
| 6/30/2024 | 8/4/2024 | 8/14/2025 | 375 | $5.31 | $1,991.25 |
| 7/31/2024 | 9/4/2024 | 8/14/2025 | 344 | $5.32 | $1,830.08 |

### C.    *Additional Interest*

Plaintiffs also seek additional interest that has accrued from August 15, 2025, through today's date, November 24, 2025. Using Plaintiffs' methodology, the Court calculates total interest that has accrued between each respective due date and today, November 24, 2025, of **$23,485.28** ($3,499.29 + $3,334.68 + $3,180.69 + $3,016.08 + $2,856.78 + $2,692.17 + $2,532.87 + $2,372.72). Thus, **$4,333.98** of additional interest has accrued between August 15, 2025, and today, the date of the judgment ($23,485.28 - $19,151.30).

| Month | Due Date | Interest Through | Days Late | Daily Interest | Total Interest |
|---|---|---|---|---|---|
| 12/31/2023 | 2/4/2024 | 11/24/2025 | 659 | $5.31 | $3,499.29 |
| 1/31/2024 | 3/6/2024 | 11/24/2025 | 628 | $5.31 | $3,334.68 |
| 2/29/2024 | 4/4/2024 | 11/24/2025 | 599 | $5.31 | $3,180.69 |
| 3/31/2024 | 5/5/2024 | 11/24/2025 | 568 | $5.31 | $3,016.08 |
| 4/30/2024 | 6/4/2024 | 11/24/2025 | 538 | $5.31 | $2,856.78 |
| 5/31/2024 | 7/5/2024 | 11/24/2025 | 507 | $5.31 | $2,692.17 |
| 6/30/2024 | 8/4/2024 | 11/24/2025 | 477 | $5.31 | $2,532.87 |
| 7/31/2024 | 9/4/2024 | 11/24/2025 | 446 | $5.32 | $2,372.72 |

### D.    *Liquidated Damages*

Next, ERISA provides for liquidated damages in "an amount equal to the greater of . . . interest on the unpaid contributions, or . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions.  29 U.S.C. § 1132(g)(2)(C).

Here, under the Collection Policy, when an employer fails to pay contributions as required, the employer shall be responsible for liquidated damages at a rate of ten percent of the amount of delinquent contributions.  Montelle Decl. ¶ 11; Collection Policy, Art. II ¶ 5; Compl. ¶¶ 19, 21; Loscalzo Decl. ¶ 19.  Applying this formula, Plaintiffs calculated liquidated damages of **$15,511.61** ($155,116.08 × 10%).  Montelle Decl. ¶ 36.  Based on its revised numbers, the Court calculates that Defendant owes Plaintiffs $155,116.53 in unpaid contributions, rendering the liquidated damages amount under the Collection Policy **$15,511.65** ($155,116.53 × 10%).  But that amount is *less than* the amount of interest on the unpaid contributions, which is

$23,485.28. Therefore, pursuant to § 1132(g)(2)(C), the Court grants Plaintiffs the greater of those numbers, **$23,485.28**, in liquidated damages.

*  *  *

The following chart summarizes Plaintiffs' damages calculations and this Court's recalculations based on the analysis above:

|  | **Plaintiffs' Calculations** | **Revised Calculations** |
|---|---|---|
| Contributions | $155,116.08 | $155,116.53 |
| Union assessments | $6,356.73 | $6,356.66 |
| Interest | $19,156.61 | $19,151.30 |
| Additional Interest | N/A | $4,333.98 |
| Liquidated damages | $15,511.61 | $23,485.28 |
| Total | $196,141.03 | $208,443.75 |

### E.    Attorneys' Fees and Costs

Plaintiffs are also entitled to "reasonable attorney's fees and costs" under ERISA and the Collection Policy and seek to recover those sums. 29 U.S.C. § 1132(g)(2)(D); *see* Montelle Decl. ¶ 37; Collection Policy, Art. II ¶ 5; Mem. at 16–18; *see generally* Grancio Decl.

Courts in this Circuit calculate a "presumptively reasonable fee," historically known as the "lodestar" amount, by taking the product of the hours reasonably expended and a reasonable hourly rate that "a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008); *Cisneros v. Zoe Constr. Corp.*, No. 21-cv-6579, 2023 WL 5978702, at *12 (E.D.N.Y. Aug. 10, 2023). "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin v. La Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015). Moreover, a fee application must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended,

18

and the nature of the work done." *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Scott v. City of New York*, 626 F.3d 130, 133–34 (2d Cir. 2010). However, fee applications supported by "[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees." *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991). District courts have broad discretion in determining the reasonableness of an attorney's requested fees. *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-cv-3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020). Courts often consider case-specific variables such as:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3.

The reasonable hourly rate should be consistent with the prevailing rates in the local legal community for similar work by lawyers of comparable experience and skill. *See Reilly v. Commerce*, No. 15-cv-5118, 2016 WL 6837895, at *12 (S.D.N.Y. Oct. 31, 2016). "Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community." *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-cv-0126, 2019 WL 3937126, at *14 (E.D.N.Y. July 3, 2019). "The 'community' is generally considered the district where the district court sits." *Id.*

19

The ordinary rates for attorneys in the Eastern District of New York are "approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Dermansky v. Telegraph Media, LLC*, No. 19-cv-1149, 2020 WL 1233943, at *7 (E.D.N.Y. Mar. 13, 2020). In addition to ordinary rates, courts also consider the complexity of a case, the time it requires, and any returns an attorney might expect from litigation. *See Sheldon v. Plot Commerce*, No. 15-cv-5885, 2016 WL 5107072, at *18–*19 (E.D.N.Y. Aug. 26, 2016). The Court should be mindful that cases of default are "relatively simple legal matters," but courts can still take an attorney's skill in a specialized field into account. *Id*. at *19.

The next step in awarding attorneys' fees is determining the reasonableness of the number of hours expended by counsel. In reviewing a fee application, the court should exclude "excessive, redundant, or otherwise unnecessary" hours. *See Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009). The court should examine each entry "with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

Here, Plaintiffs seek **$7,250.40** in attorneys' fees. Mem. at 18; Grancio Decl. ¶¶ 28–29; ECF No. 31-6 at 8 (Grancio Decl. Ex. Q; "Billing Records"). Adrianna Grancio, a partner at Virginia & Armbinder, LLP ("V&A"), claims 10.9 hours at $333/hour totaling $3,629.70; Marlena Smith, an associate at V&A, claims 1.5 hours at $333/hour totaling $499.50; Lillianna Iorfino, an associate at V&A, claims 5 hours at $333/hour totaling $1,665; Allison Herstic, an associate at V&A, claims 1.4 hours at $333/hour totaling $466.20; Eva Keating, Director of

Operations and formerly a senior paralegal at V&A, claims 1 hour at $132/hour totaling $132; and Abigail Frankel, a paralegal at V&A, claims 6.5 hours at $132/hour totaling $858. *See* Billing Records; Grancio Decl. ¶¶ 19–25.[9]

In other words, Plaintiffs' counsel and paralegals together expended a total of 26.3 hours on this matter, for a total fee of $7,250.40. *See* Billing Records; Grancio Decl. ¶ 28. This is a reasonable amount of time to prepare an ERISA complaint and motion for entry of default judgment, particularly where, as here, Plaintiffs' counsel was required to review extensive records, prepare a number of detailed declarations, and perform numerous calculations. *See Trs. of the Pavers and Rd. Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. Nus Contracting, Inc.*, No. 17-cv-5037, 2018 WL 4328829, at *7 (E.D.N.Y. Aug. 6, 2018) *report and recommendation adopted*, ECF No. 27 (awarding V&A fees for 20.5 hours of work in a similar ERISA default); *Trs. of Local 7 Tile Indus. Welfare Fund v. Tuscany Tile & Stone, Inc.*, No. 16-cv-1641, 2017 WL 3173015, at *6 (E.D.N.Y. Feb. 15, 2017), *report and recommendation adopted*, 2017 WL 3172997 (E.D.N.Y. July 25, 2017) (awarding V&A fees for 21.5 hours of work in a similar ERISA default); *Gesualdi v. Interstate Masonry Corp.*, No. 12-cv-0383, 2014 WL 1311709, at *13 (E.D.N.Y. Mar. 28, 2014) (finding approximately 23 hours spent on an ERISA default reasonable and collecting cases in which reasonable hours expended ranged from 14 to nearly 28 hours).

With respect to the blended hourly rate sought for the attorneys' time, given the rates which courts in this district generally award, the Court finds $333 to be reasonable. *See IKNA Constr. LLC*, No. 24-cv-561, 2025 WL 447731, at *17, *report and recommendation adopted*,

---

[9]    V&A uses a "blended billing rate" for Plaintiffs, meaning the work performed by both partners and associates is billed at the same hourly rate pursuant to an agreement between the parties. Grancio Decl. ¶ 23. V&A uses the same method for work performed by paralegals, regardless of their seniority, pursuant to an agreement between the parties. *Id.* ¶¶ 26, 27.

2025 WL 777108 (finding proposed hourly rate of $333 to be reasonable for Ms. Grancio); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Rici Corp.*, No. 24-cv-6632, 2025 WL 2682626, at *10 (E.D.N.Y. Sept. 19, 2025), *report and recommendation adopted*, October 15, 2025, Text Order (same); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp.*, No. 24-cv-537, 2025 WL 819918, at *9 (E.D.N.Y. Mar. 16, 2025), *report and recommendation adopted*, 2025 WL 953135 (E.D.N.Y. Mar. 31, 2025) (finding proposed hourly rate of $333 to be reasonable for Ms. Grancio and Ms. Smith).[10]

The Court also finds the requested blended hourly rate of $132 for the paralegals, Ms. Keating and Ms. Frankel, to be reasonable. *See Rici Corp.*, 2025 WL 2682626, at *10 (finding proposed hourly rate of $132 to be reasonable for Ms. Keating and Ms. Frankel); *Toros Bros. Constr. Corp.*, 2025 WL 819918, at *9 (same); *Restrepo v. Dynamic Fire, Inc.*, No. 25-cv-2079, 2025 WL 3057385, at *14 (E.D.N.Y. Nov. 3, 2025) (recommending reduction of requested $155 hourly rate for Ms. Keating and Ms. Frankel to $120 and noting that "[c]ourts in the EDNY and SDNY generally consider hourly rates ranging from $70 to $150 to be reasonable for paralegals").

---

[10]     The Court acknowledges that the blended billing rate does not account for the disparity in experience between the lawyers, who range from a 2016 law school graduate (Ms. Grancio) to a 2024 law school graduate (Ms. Herstic). *See* Grancio Decl. ¶¶ 19–22. However, the Court finds that the blended rate is reasonable because, "[f]or starters, it is the actual rate that was negotiated with the clients, which is obviously strong evidence of what the market will bear." *Pig Newton, Inc. v. The Boards of Directors of The Motion Picture Indus. Pension Plan*, No. 13-cv-7312, 2016 WL 796840, at *5 (S.D.N.Y. Feb. 24, 2016). Further, although $333 is on the higher end for associates, it is nevertheless appropriate because Ms. Grancio, a partner with nearly ten years of experience in ERISA litigation, *see* Grancio Decl. ¶¶ 1, 19, completed a majority of the legal work (10.9 hours herself compared with 7.9 hours between three associates). *See* Billing Records; *United Realty Advisors, LP v. Verschleiser*, No. 14-cv-5903, 2023 WL 4141545, at *12 (S.D.N.Y. June 23, 2023); *see Pig Newton, Inc.*, 2016 WL 796840, at *5.

Accordingly, the Court approves a fee award based on a rate of $333 per hour for attorneys, and $132 per hour for paralegals, for a total fee award of **$7,250.40**.

Plaintiffs further seek **$608.39** in costs and expenses, representing the court fees, postage fees, research fees, and service fees incurred in this action.  Grancio Decl. ¶ 30; Billing Records at 8–9.  Plaintiffs are entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  The Court thus finds Plaintiffs' requested costs and expenses to be reasonable.

### F.     Post-Judgment Interest

Finally, "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)).  The post-judgment interest rate in ERISA actions is tied to the formula for calculation set forth in 28 U.S.C. § 1961(a), which provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  Moreover, post-judgment interest "shall be computed daily [from the date of judgment] to the date of payment."  28 U.S.C. § 1961(b).

Here, Plaintiffs seek an award of post-judgment interest in accordance with 28 U.S.C. § 1961.  *See* Mem. at 18–19.  As this award is mandatory, the Court awards post-judgment interest, to be calculated in accordance with 28 U.S.C. § 1961(a) and (b) from the date of the entry of judgment to the date of payment.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for default judgment against Defendant on Plaintiffs' ERISA and LMRA claims.  The Court awards Plaintiffs (1) estimated delinquent contributions of **$155,116.53** and estimated delinquent union assessments of **$6,356.66** for the period of December 2023 through July 2024, plus interest on the estimated delinquent contributions of **$19,151.30**, and liquidated damages of **$23,485.28**; (2) additional interest of **$4,333.98** that accrued from August 15, 2025, through the date of this judgment; (3) attorneys' fees and expenses of **$7,858.79**; and (4) post-judgment interest at the statutory rate. The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated:  Brooklyn, New York
         November 24, 2025